| DISTRICT COURT, DENVER COUNTY, STATE OF COLORADO | DATE FILED: November 17, 2016 1:11 PM |
|---|---|
| 1437 Bannock Street<br>Denver, CO 80202 | |
| Plaintiff: **PHILIP BRIAN GOODMAN,**<br><br>v.<br><br>Defendant: **THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, a New York Corporation.** | |
| Paul E. Collins<br>Carol Lynn Thomson<br>TREECE ALFREY MUSAT P.C.<br>633 17th Street, Suite 2200<br>Denver, Colorado 80202<br>Telephone: 303-292-2700<br>Facsimile: 303-295-0414<br>E-mail: pcollins@tamlegal.com; cthomson@tamlegal.com<br>*Attorneys for Plaintiff* | ▲ **COURT USE ONLY** ▲<br><br>Case Number:<br><br>Division: |
| **COMPLAINT AND JURY DEMAND** | |

Plaintiff, Philip Brian Goodman complains against Defendant, and alleges as follows:

### I. PARTIES

1. Plaintiff, Philip Brian Goodman is an individual residing at 2900 Whitewing Way, Castle Rock, Colorado 80108.

2. Defendant, the Guardian Life Insurance Company of America, is incorporated in the State of New York and has a principle place of business located at 7 Hanover Square, New York, NY 10004.

3. Defendant is the Administrator and/or Insurer of the employee welfare benefit plan at issue.

4. Defendant's registered agent for service of process is Corporation Service Company, 1560 Broadway, Denver, Colorado 80202.

**EXHIBIT A**

## II. JURISDICTION AND VENUE

5. Jurisdiction is proper in this case as ERISA provides for concurrent state and federal jurisdiction under 29 U.S.C. § 1132(e)(1).

6. Jurisdiction is also proper as EIRSA provides for concurrent state and federal jusidiction under 29 U.S.C. § 1132(a)(1)(B).

7. Venue is proper in this Court under C.R.C.P. 98(c)(1) as Defendant is a not a resident of Colorado and the City and County of Denver is designated in the Complaint.

## III. NATURE OF THE ACTION

8. This is an action for benefits due but wrongfully denied or delayed, for breach of fiduciary duties, and to enforce Plaintiff's rights to future benefits pursuant to a policy of long term disability insurance.

9. At all pertinent times, Defendant administered and/or insured an employee benefit plan designated by Defendant as Policy Number 480920 which provides Short Term Disability ("STD") and Long Term Disability ("LTD") insurance benefits to employees of Four Winds Interactive, LLC ("Four Winds"). (Exhibit A) The Plan has delegated to Guardian Life Insurance Company of America, ("Guardian") its obligation to make all benefit decisions at issue in this claim.

10. At all pertinent times (from December 8, 2014 (date of hire) to May 12, 2015 (last day worked), Plaintiff was a full-time employee of "Four Winds." From January 1, 2015 (effective date of coverage) forward, Plaintiff was a "participant" in or "beneficiary" of the Plan within the meaning of ERISA, including the LTD coverage; however Plaintiff, personally and individually paid all premiums for LTD coverage and the LTD policy was fully portable.

11. Thus, and at all pertinent times, and by virtue of said employment, Plaintiff was covered by the provisions of the Plan, including coverage for LTD benefits subject to the terms and conditions of the policy.

## IV. GENERAL ALLEGATIONS

12. At all pertinent times, prior to May 12, 2015, Plaintiff was an active, full-time employee and therefore satisfied all eligibility requirements for, and was a "participant" in the Plan (and/or a "beneficiary" of the Plan) within the meaning of ERISA; the Plan is subject to the provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1101, et seq., ("ERISA"); Plaintiff had purchased an optional LTD policy for which the premiums were paid solely by him with after tax dollars.

13. By May 13, 2015 Plaintiff became disabled due to multiple health issues including but not limited to sleep apnea, neck pain, generalized body pain, musculoskeletal pain, memory and cognitive difficulties, chronic migraine headaches, and syncope episodes involving loss of consciousness and/or near loss of consciousness, and resulting falls.

14. Plaintiff's migraine headaches and musculoskeletal pain are so severe, that at times he is unable to successfully perform activities of daily living, including getting dressed.

15. Plaintiff's migraine headaches occur on a daily, or near daily basis.

16. Plaintiff's chronic pain symptoms are exacerbated by lights, sounds, and busy "community settings."

17. Plaintiff's chronic pain symptoms are also exacerbated by reading.

18. The task of reading constituted a significant portion of his job duties in his occupation, including but not limited to his job duties while employed by Four Winds.

19. Plaintiff's chronic pain symptoms are also exacerbated by exposure to light, including indoor fluorescent lights, sometimes requiring him to wear dark glasses and a wide brim hat even indoors.

20. Plaintiff's chronic pain symptoms, including musculoskeletal pain, are distracting and contribute to his inability to function effectively according to Plaintiff's treating physician, Dr. Bryan K. Woodruff.

21. Plaintiff's syncope episodes prevent him from operating a motor vehicle.

22. Plaintiff's position as a director of Four Winds (a technology company) requires the ability to work on a full-time basis, including reading, using a computer, and using higher cognitive functions.

23. As the aforementioned conditions prevented him from working on a full-time and regular basis, and from performing the other material requirements of his own and/or other comparable occupation, Plaintiff applied to the Plan, through the Defendant, for short term disability benefits (STD) on or about May 18, 2015.

24. The claim for STD benefits was eventually accepted and Plaintiff received 12 weeks of STD payments.

25. While processing Plaintiff's STD claim, Guardian sent questionnaires to Plaintiff's physicians, including Dr Bryan K. Woodruff.

26. On or about June 22, 2016, Dr. Woodruff was sent a questionnaire asking (regarding Plaintiff): "Is the reason you saw this claimant on 5/16/15 related to a diagnosis of Sleep Apnea?; and, "Your office provided the following disabling diagnosis: extreme fatigue, muscle weakness, blackouts and bilateral lower extremity joint pain. Are these a condition [sic] related to his Sleep Apnea?" (See Exhibit B)

27. On June 24, 2015 Dr. Woodruff responded "no" to both questions. (See Exhibit B)

28. Dr. Woodruff's response was sent to Defendant and was kept in its files.

29. Plaintiff's condition did not improve and he applied, through Defendant, for long term disability benefits under the LTD coverage.

30. Plaintiff applied for LTD benefits on or about May 18, 2015 and was assigned a claim number of 73574 by Defendant.

31. By June 10, 2015, the date of a Hepatology consult exam at Mayo Clinic in Arizona, Plaintiff reported experiencing chronic pain including muscle and joint pain in both upper and lower extremities, abdominal pain, back pain and headache.

32. On June 12, 2015, Dr. Woodruff noted that distractibility caused by Plaintiff's chronic pain may be leading to difficulties learning and retaining new information.

33. By October 5, 2015, Plaintiff was taking 300 mg of gabapentin per day for chronic pain prescribed by rheumatologist, Dr. Elena Weinstein.

34. As Plaintiff had less than 12 months of LTD coverage as of the last day of work, Defendant conducted a pre-existing condition investigation, pursuant to the terms of the policy.

35. This investigation consisted of a review of Plaintiff's medical treatment during the look back period December 31, 2013 to December 31, 2014 (12 months prior to the date the coverage became effective), for evidence that Plaintiff had received advice or treatment from a doctor, undergone diagnostic procedures other than routine screening, was prescribed or took prescription drugs, or received other medical care or treatment including consultation with a doctor, for any condition causing his disability whether diagnosed or misdiagnosed and any symptoms thereof.

36. In July of 2015, Defendant sent Plaintiff's physician, Dr. Woodruff, a questionnaire asking about specific restrictions and limitations that preclude a return to work; Dr. Woodruff responded that Plaintiff's musculoskeletal pain symptoms would interfere with a return to work. (See Exhibit C)

37. In September of 2015, Defendant sent Dr. Woodruff another questionnaire asking about restrictions that would impact or preclude a return to work; Dr. Woodruff responded that Plaintiff's syncope episodes, among other things, interfered with Plaintiff's ability to return to work. (See Exhibit D)

38. Dr. Woodruff also indicated at that time that Plaintiff was restricted from driving due to syncope and that any return to work would be part time, not full time. (See Exhibit D)

39. On October 15, 2015, Defendant denied Plaintiff's claim for LTD benefits on the grounds Plaintiff had been seen and treated within the look back period of January 1, 2014 through December 31, 2014 by a Sleep Medicine Physician, Dr. Duntley for his "disabling condition." (See Exhibit E, first page, last paragraph).

40. Although the October 15, 2015 letter stated that Plaintiff "ceased working due to Mild Cognitive Impairment/Dysfunction and related symptoms" there was no discussion in the October 15, 2015 denial letter of any medical condition suffered by Plaintiff, other than the sleep disorder, or whether these conditions were disabling; specifically there was no mention of headaches, musculoskeletal pain or syncope. (See Exhibit E, first page, second to last paragraph).

41. The October 15, 2015 letter also did not mention the disabling diagnosis of extreme fatigue, muscle weakness, blackouts and bilateral lower extremity joint pain which Dr. Woodruff had provided to Defendant and confirmed as being unrelated to sleep apnea.

42. On or about January 19, 2016, Plaintiff, by and through counsel, appealed the denial and sent additional records to Defendant indicating that Plaintiff suffered from disabling conditions and symptoms for which he was treated during the look back period and which were unrelated to sleep apnea.

43. On or about February 2, 2016, Defendant responded, indicating that the appeal had been received and was being reviewed.

44. On or about March 14, 2016, Defendant sent the matter our for a "Peer Panel" review by board certified physicians specializing the "disabling diagnosis."

45. On or about March 30, 2016, Defendant provided Plaintiff with the Peer Panel report; in the Peer Panel Report it was noted that there was no evidence to support the proposition that Plaintiff's cognitive dysfunction and syncope episodes were the result of obstructive sleep apnea, for which Plaintiff has received treatment during the look back period. (See Exhibit F, 6 of 9, first full paragraph).

46. On or about May 19, 2016, Defendant sent Plaintiff a letter denying the appeal on the basis that the "disabling diagnosis of OSA [obstructive sleep apnea], Sleep Apnea, Depression, Restless Leg Syndrome and Cognitive Dysfunction were due to a Pre-Existing Conditions as defined by the Group Policy." (Exhibit G, second paragraph)

47. There was no discussion in the denial letter of Plaintiff's headaches or syncopal episodes, or diffuse musculoskeletal pain.

48. On or about June 15, 2016, Plaintiff, by and through counsel, sent additional medical records to Defendant requesting that Defendant re-evaluate the claim; specifically mentioning the headaches and syncopal episodes which Defendant had not addressed in its previous determination.

49. Along with the additional medical records, Plaintiff also submitted a letter from a friend who is also a medical professional, and the statement of his wife, which provided a chronology of the onset and development of Plaintiff's symptoms and the resulting disabilities.

50. Defendant agreed to re-open the appeal of the denial of LTD benefits.

51. On or about July 28, 2016, Defendant provided Plaintiff with a copy of a report by Dr. Daniel Kitei, one of the physicians from the Peer Review panel. (Exhibit H)

52. Defendant had asked Dr. Kitei several questions concerning Plaintiff's syncopal episodes; in his report, Dr. Kitei indicated: 1) there was no mention of syncope in the medical records from the look back period; 2) there was a possibility of syncope from May 13, 2015 onward; and, 3) that safety restrictions were warranted including restriction from operating a motor vehicle. (Exhibit H, page 2 of 3, paragraph 1 to page 3 of 3, paragraph 3).

53. Although Dr. Kitei noted that the medical records showed Plaintiff was complaining of headaches, and suffering from diffuse musculoskeletal pain, there was no mention of headaches in Defendant's questions to Dr. Kitei or in the responses.

54. On August 26, 2016, Defendant denied Plaintiff's claim on the basis that there was insufficient "evidence of functional impairments from the diagnosis of Syncope and headaches which are of sufficient intensity to preclude [Plaintiff] from performing his own occupation as of May 13, 2015[.]" (See Exhibit I, Page 9, second to the last paragraph).

55. From August 23, 2016 to September 15, 2016, Plaintiff underwent a course of treatment at the Mayo Arizona Clinic Pain Program to address, among other symptoms, his chronic daily headaches and chronic diffuse musculoskeletal pain.

56. During the pre-program evaluation on June 13, 2016, Plaintiff reported chronic headaches, migraines and musculoskeletal pain that has been intractable despite medical interventions.

57. Plaintiff described an adverse impact on overall functioning, including ability to work or to engage in life activities in general.

58. Plaintiff reported that 100 percent of his daily activities were controlled by pain and that he was living an increasingly pain contingent life style.

59. During his course of treatment at the Mayo Arizona Clinic Pain Program, Plaintiff's chronic diffuse musculoskeletal pain was addressed; Plaintiff was diagnosed with and assessed a treatment plan for Fibromyalgia.

60. On October 7, 2016, Plaintiff submitted additional medical records detailing his course of treatment at the Mayo Arizona Clinic Pain Program along with records from rheumatologist, Dr. Elena Weinstein.

61. Plaintiff has provided all available information demonstrating the nature and extent of his ongoing disability, including supporting records from his treating doctors documenting Plaintiffs inability to function. These demonstrate Plaintiff remains unable to work in his previous occupation, or any other reasonable occupation.

## FIRST CLAIM FOR RELIEF
### (Claim for Benefits Due and/or to Enforce Plan Rights Pursuant to 29 U.S.C. § 1132(a)(1)(B))

62. Plaintiff hereby incorporates the allegations of paragraphs 1 through 61 of this Complaint as if fully set forth herein.

63. Plaintiff is a beneficiary of an employee welfare benefit plan sponsored by his former employer, Four Winds Interactive, LLC.

64. Defendant is the administrator of the Four Winds Interactive, LLC employee welfare benefit plan, within the meaning of ERISA.

65. Defendant was otherwise delegated the authority to administer claims for LTD benefits by the Plan.

66. The Plan is an ERISA-regulated plan pursuant to 29 U.S.C. § 1001 *et seq.*

67. At all pertinent times Defendant was acting as a fiduciary with respect to the Four Winds Interactive, LLC employee welfare benefit plan and as to the participants and beneficiaries thereof.

68. At all pertinent times, Plaintiff met the criteria for LTD benefits under the Plan including that he was unable to perform the functions of his own and/or any other occupation, and provided reasonable documentation (medical or otherwise) of that fact.

69. Defendant has improperly, erroneously, arbitrarily and/or capriciously denied Plaintiff benefits due and owing under the Plan.

70. Defendant's wrongful conduct includes, but is not limited to:

A. Failing to consider all pertinent medical information, including but not limited to the opinions of Plaintiffs treating physicians;
B. Failing to provide an adequate review and appeal;
C. Failing to act in Plaintiffs best interests;
D. Failing to consider credible evidence of functional impairment including the statements of Plaintiffs friend and spouse;
E. Failing to reasonably interpret and apply the terms of the Plan; and
F. Failing to conduct a reasonable investigation.

71. As a matter of law, Defendant has an inherent conflict of interest in this matter as claims administrator and guarantor.

72. Defendant's wrongful conduct has caused injuries and damages to the Plaintiff, including lost LTD benefits.

73. Plaintiff is owed past benefits under the Long Term Disability Insurance part of the Four Winds Interactive, LLC employee benefits plan from the date of his disability until present.

74. Plaintiff is entitled to enforce his rights to future benefits due under the Long Term Disability Insurance part of the Four Winds Interactive, LLC employee benefits plan.

## SECOND CLAIM FOR RELIEF
(Claim for Surcharge for Breach of Fiduciary Duty
Pursuant to 29 U.S.C. § 1132(a)(3))

75. Plaintiff hereby incorporates the allegations of paragraphs 1 through 74 of this Complaint as if fully set forth herein.

76. Defendant failed to discharge its duties with respect to the Plan solely in the interest of the participants and beneficiaries.

77. Defendant failed to discharge its duties with respect to the Plan for the exclusive purpose of providing benefits to participants and their beneficiaries as required under 29 U.S.C. § 1104.

78. As a result of Defendant's breach of its fiduciary duties, Plaintiff has been damaged in the amount of the gains that Defendant has improperly realized from its breach of fiduciary duty.

79. Plaintiff is entitled to recover as damages the amount reflective of the gains that Defendant has improperly realized from its breach of fiduciary duty as a surcharge.

## THIRD CLAIM FOR RELIEF
### (Breach of Insurance Contract)

80. Plaintiff hereby incorporates the allegations of paragraphs 1 through 79 of this Complaint as if fully set forth herein.

81. As set forth above, Plaintiff and Defendant entered into a valid, binding and enforceable contract for insurance which provided the benefits alleged herein.

82. Said contract was an individual policy of LTD insurance, paid for personally by Plaintiff, and was fully portable.

83. Plaintiff fully complied with all the provisions of the contract, including without limitation personally paying premiums in a timely fashion and complying with all provisions governing the submission of claims. Alternatively, such conditions precedent have been waived or are excused.

84. Defendant's unreasonable delay and denial of payment of Plaintiff's claim for LTD benefits constitutes a breach of the insurance contract and is a breach of Plaintiff's reasonable expectations concerning the timely payments he would receive under the LTD policy.

85. Defendant's failure to conduct a reasonable investigation, failure to timely inform Plaintiff of determinations on his claim, and failure to pay covered policy benefits constitute breaches of the insurance contract.

86. As a result of Defendant's breaches, Plaintiff has suffered and continues to suffer damages, including pre-judgment and post judgment interest at the highest rate allowed by law, and his reasonable attorneys' fees as allowed by law.

## FOURTH CLAIM FOR RELIEF
### (Unreasonable Delay and Denial of Payment of Covered Benefits Pursuant to C.R.S. §§ 10-3-11 15 and 10-3-11 16)

87. Plaintiff hereby incorporates the allegations of paragraphs 1 through 86 of this Complaint as if fully set forth herein.

88. Plaintiff suffers from a disability covered by the LTD Policy, and submitted claims for disability benefits to Defendant.

89. The claim of disability benefits submitted by Plaintiff was covered by the LTD policy and Plaintiff was owed timely payment of these benefits under the terms of the policy.

90. Defendant delayed and denied payment of covered benefits without a reasonable basis for its action.

91. Plaintiff is therefore entitled to two times the covered benefit, attorneys' fees, and costs pursuant to C.R.S. § 10-3-1116, together with pre-judgment interest at the highest rate allowed by law.

## FIFTH CLAIM FOR RELIEF
### (Bad Faith Breach of Insurance Contract)

92. Plaintiff hereby incorporates the allegations of paragraphs 1 through 91 of this Complaint as if fully set forth herein.

93. Defendant had a duty to act reasonably and in good faith in handling Plaintiff's claims and in the payment of his insurance claims, including the obligation to act with ordinary, reasonable diligence in investigating the claims submitted by Plaintiff and in determining the benefits due and owing under the LTD policy, and to promptly pay all amounts due and owing.

94. Defendant breached its duty to act reasonably and in good faith as described above and by unreasonably and improperly delaying payment of Plaintiff's claim as provided for by C.R.S. § 10-3-1104.

95. Colorado's Fair Claims Practices Act requires Defendant, as an insurance carrier, to treat its insured with honesty, fairness, and with due regard for the interests of the insured. Defendant breached this duty in the claims handling of Plaintiff's insurance claim.

96. Defendant refused to timely pay Plaintiff's claim for LTD benefits when the obligation to settle and pay had become more than reasonably clear. Upon information and belief, Defendant breached this duty in the claims handling of Ms. Rice's insurance claim for, *inter alia*, financial gain and profit.

97. In the State of Colorado, Defendant, as an insurance carrier, has a duty to affirm or deny coverage of claims within a reasonable time claims submissions have been completed. Upon information and belief Defendant breached this duty in the processing of Plaintiff's insurance claim.

98. Rather than carrying out its contractual, statutory, regulatory and ethical duties, Defendant committed acts during the processing of Plaintiff's claim which were not in "good faith."

99. Defendant committed the aforementioned actions complained of above, were made so often as to constitute a general business practice and with the motive of Defendant to enhance its profits and were designed to be to the detriment of its policyholders including Plaintiff; and all such actions were conducted willfully, wantonly, maliciously, or in the reckless disregard of Plaintiff's rights under the LTD policy and the law.

100. As a direct result of Defendant's aforementioned acts, omissions, and statutory violations, Plaintiff was required to hire and become obligated for attorney's fees and costs in connection with the submission of his claim and ultimately with the prosecution of this action.

101. As a result of Defendant's bad faith, Plaintiff has suffered and continues to suffer damages, including out of pocket costs, inability to replace income lost due to disability, pre-judgment and post judgment interest at the highest rate allowed by law, and reasonable attorneys' fees as allowed by law.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendant as follows:

1. Past benefits due and owing under the LTD policy.

2. An order compelling future payment of all benefits owed in the future under the LTD policy.

3. A surcharge in the amount to be determined at trial but sufficient to compensate Plaintiff and to reflect gains that Defendant has improperly realized from its breach of fiduciary duty.

4. Two times the benefit owed but delayed and/or denied.

5. Attorneys fees and costs as recoverable by law.

Dated: November 17, 2016.

Respectfully submitted

/s Paul E. Collins
Paul E. Collins
Carol Lynn Thomson
TREECE ALFREY MUSAT P.C.
633 17th Street, Suite 2200
Denver, Colorado 80202
Telephone: 303-292-2700
Facsimile: 303-295-0414
E-mail: pcollins@tamlegal.com
cthomson@tamlegal.com
*Attorneys for Plaintiff*

Plaintiff's Address:
2900 Whitewing Way,
Castle Rock, Colorado 80108